IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIELLE JEANETTE WOOD, | Cause No. CV 25-201-M-BMM |
| Petitioner, | |
| vs. | ORDER |
| AUSTIN KNUDSEN, ATTORNEY GENERAL FOR THE STATE OF MONTANA; JANIA HATFIELD, SANDERS COUNTY ATTORNEY; SHAWN FIELDERS, SANDERS COUNTY SHERIFF, | |
| Respondents. | |

This matter comes before the Court on Petitioner Wood's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Wood faces a second trial in Montana's Twentieth Judicial District, Sanders County.  Wood asserts a double jeopardy violation and seeks to prevent the State of Montana from retrying her. (*See generally,* Doc. 1.)  The matter is currently scheduled for trial on June 29, 2026.  For the reasons set forth below, the petition will be denied.

## I.    Facts and Procedural History

Wood was charged with the homicide of Matthew LaFriniere, her prior romantic partner with whom she shared a child. Wood and LaFriniere shared a tense co-existence after an acrimonious separation and contentious custody battle.

1

The following facts were outlined by the Montana Supreme Court during recent

supervisory control proceedings:[1]

> The State charged Wood by Amended Information with deliberate
> homicide, in violation of § 45-5-102(1)(a), MCA. The Amended
> Information was premised on two alternative theories of guilt—direct
> liability or accountability—and alleged Wood "committed the offense
> of Deliberate homicide by purposely or knowingly causing the death
> of Matthew LaFriniere, by shooting him with a firearm or being
> legally accountable for the commission of the offense of Deliberate
> homicide. (*See* Mont. Code Ann. §§ 45-2-301 and 45-2-302, MCA)."
> The case proceeded to a jury trial on January 14, 2021. At the close of
> evidence, Wood moved for dismissal of the charge, arguing the State
> had presented insufficient evidence to prove her directly responsible
> or legally accountable for causing LaFriniere's death. The District
> Court denied the motion.
>
> The District Court instructed the jury on both theories of criminal
> liability. Wood proposed a verdict form that, in the event the jury
> convicted her, would have required the jury to specify which
> alternative theory formed the basis of its unanimous verdict. The
> District Court rejected the verdict form requested by Wood and
> furnished the jury with the State's proposed general verdict form
> instead, which allowed the jury to find Wood guilty or not guilty of
> deliberate homicide without differentiating between the direct liability
> and accountability theories. The jury returned a guilty verdict on the
> general form provided.
>
> Wood appealed to this Court and requested a new trial, arguing that
> the District Court erred by submitting the accountability theory to the
> jury because the State presented insufficient evidence to support it.
> We agreed, and reversed her conviction. *State v. Wood*, 2024 MT 318,
> 419 Mont. 503, 561 P.3d 945 (*Wood I*). We remanded for a "new trial

---

[1] A copy of this order is attached to Wood's petition.  *See*, (Doc. 1-2.)

in the State's discretion." *Wood I*, ¶ 53.

Upon remand, Wood moved for an order dismissing this case with prejudice, claiming that a second trial would violate the double jeopardy protections of the Fifth Amendment to the United States Constitution and Article II, Section 25, of the Montana Constitution, as well as the statutory double jeopardy protections set forth in § 46-11-503(1)(a), (c), MCA. At oral argument on April 15, 2025, the District Court asked the State if "there [was] a new information in this case now that doesn't have accountability in it[.]" The State responded, "[t]hat's correct."[3]

The District Court denied Wood's motion and set this matter for a jury trial. The court reasoned the State could retry Wood because "[t]he Montana Supreme Court had the opportunity in this case to dismiss it but instead expressly reversed and remanded for a new trial." Citing *State v. Cardwell*, 191 Mont. 539, 625 P.2d 553 (1981), the District Court concluded "[i]t is black letter law in Montana that '... a reversal of a judgment of conviction upon appeal and a retrial does not constitute double jeopardy.' "

*Wood v. Twentieth Jud. Dist. Ct., Sanders Cnty.* ("*Wood II*"), 2025 MT 163, ¶¶3-7, 423 Mont. 184, 573 P.3d 299 (internal citations omitted). Wood then filed a petition for writ of supervisory control seeking to reverse the district court's denial of her motion to dismiss.

The Montana Supreme Court ultimately denied Wood's writ. The Court began by noting that double jeopardy does not bar a retrial when a conviction is overturned on appeal due to trial error, such as incorrectly instructing the jury. *Id*. at ¶ 11 (*citing Burks v. United States*, 437 U.S. 1, 15 (1978); *State v. Duncan,* 2012 MT 241, ¶11, 366 Mont. 443, 291 P. 3d 106). The Court noted, however, that

3

double jeopardy concerns do preclude a second prosecution if the first trial results in "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Id*. at ¶12, *citing McElrath v. Georgia*, 601 U.S. 87, 96 (2024) (*quoting Evans v. Michigan*, 568 U.S. 313, 318 (2013)). Following these principles, the Montana Supreme Court observed that if an appellate court reverses a conviction because the government's evidence was "so lacking that [the case] should not have even been submitted to the jury," then double jeopardy precludes retrial of the accused. *Id*. (*quoting Oregon v. Kennedy*, 456 U.S. 667, 677 n. 6 (1982) (noting that reversal for insufficient evidence is an exception to general rule permitting retrial after successful appeal) (additional citations omitted).

The State first contended that Wood's petition for supervisory control should not be entertained by the Court as the direct appeal involved a jury instruction issue and Wood did not appeal the sufficiency of the evidence. The State argued that no double jeopardy issue existed because the reversal of Wood's conviction was predicated on instructional trial error. *Id*. at ¶13.

The Montana Supreme Court was not persuaded by the argument, focusing not on the labels attached to the prior decision, but on the substance of the analysis. The Montana Supreme Court noted that although instructional error was mentioned, the focus of the decision was on the lack of trial evidence regarding the second element of accountability- that Wood and some other individual(s)

4

"affirmatively acted with and *in furtherance of a 'common purpose'* before or during to contributorily aid or abet the commission of deliberate homicide." *Id*. at ¶14, *citing Wood I* at ¶¶41-44, 50 (emphasis in original) (additional citations omitted.)  The State presented no evidence or argument at trial supporting this element.

The Montana Supreme Court noted that the district court had erroneously submitted the State's alternative deliberate homicide by accountability theory to the jury for consideration. *See Wood I* at ¶44. The substantive correctness of the jury instruction itself was not at issue.  The Montana Supreme Court held on direct appeal that the accountability instruction was wholly unsupported by the evidence and should not have been given to the jury.  *Wood II*, at ¶14.  The reversal of Wood's first conviction, thus, amounted to a ruling "that the State's proof was insufficient to establish criminal liability for deliberate homicide by accountability." *Id*. (citations omitted).  Accordingly, any attempt by the State to retry Wood for deliberate homicide by accountability would violate Wood's right to avoid double jeopardy.

Wood next contended that double jeopardy prohibited a second trial for deliberate homicide by direct liability.  Relying upon *Sanabria v. United States*, 437 U.S. 54 (1978), Wood argued that under state law, accountability and direct responsibility for deliberate homicide have been treated as the same offense,

accordingly, Wood asserted that she could not be retried. *Id*. at ¶15.

The Montana Supreme Court was not persuaded. In *Sanabria*, the question presented was whether following the trial court's entry of a mid-trial judgment of acquittal on a single count indictment, the government could subject the defendant to a retrial on the same facts using a different legal theory. *Id*., *citing Sanabria*, 437 U.S. at 64-65. The United States Supreme Court held that it could not. Wood argued that much like in *Sanabria*, the ruling regarding insufficient accountability evidence immunized Woods from being retried under a direct liability theory.

The Montana Supreme Court distinguished *Sanabria* on two separate grounds. First, it noted that the judgment of acquittal in *Sanabria* was entered on the entire count and found the defendant not guilty of the offense set forth in the indictment "without specifying that it did so only with respect to one theory of liability." *Wood II* at ¶16, *citing Sanabria*, 437 U.S. at 67. In *Wood I*, however, the Court expressly held that the district court erred by submitting the State's alternative charge of accountability to deliberate homicide, by aiding or abetting, to the jury for consideration. *Id*. There was no argument made on direct appeal that there was insufficient evidence to prove that Wood acted independently in committing the homicide.

Next, the Montana Supreme Court noted that the defendant in *Sanabria* was acquitted due to insufficient proof of an element shared by both theories of

6

liability, accordingly, the Montana Supreme Court concluded double jeopardy

would still bar a second prosecution even if the government had charged each

theory of liability as separate counts. *Id*. at ¶17, *citing Sanabria*, 437 U.S. at 72-

73. Common elements were not at issue in *Wood I*.

The Montana Supreme Court noted that although not "technically [a]

separate and distinct offense apart from direct deliberate homicide," accountability

to deliberate homicide by aiding or abetting another "requires proof beyond a

reasonable doubt that: (1) a deliberate homicide occurred, and (2) the accused and

some other person or persons affirmatively acted with and in furtherance of a

common purpose before or during the homicide to aid or abet the commission of a

deliberate homicide." *Id*, citing *Wood I*, ¶40. Noting that the *Wood I* analysis only

focused on the absence of proof as to the second accountability element, the

Montana Supreme Court referenced its prior opinion:

> [T]he State presented no evidence or argument at trial even suggesting
> that some third party shot and killed the decedent LaFriniere, or that
> Wood actively assisted some other person in the planning or
> commission of the shooting of LaFriniere, with and in furtherance of
> *their* common purpose to cause his death…[T]he State merely pointed
> out Instruction Nos. 18-20 authorizing the jury to alternatively find
> that, if Wood did not personally shoot LaFriniere, she somehow acted
> in concert with someone else with the purpose to cause his shooting
> death.

*Id*., *citing Wood I*, ¶42 (emphasis in original).

The Montana Supreme Court then looked to a Washington state court

7

decision in which it was determined that a defendant could be retried under an alternative theory of guilt after his initial conviction was overturned on appeal without running afoul of double jeopardy concerns. *Id*. at ¶18 (*citing Washington v. Ramos*, 163 Wash. 2d 654, 660,184 P. 3d 1256, 1259 (WA. 2008)).

The Montana Supreme Court noted that Wood's conviction was not reversed because there was insufficient evidence that she independently committed deliberate homicide. Wood's conviction was reversed because it was possible that the jury found her guilty of the alternative count of accountability, which was not supported by the evidence. The Montana Supreme Court did not rule out the possibility, however, that the jury unanimously found Wood guilty of direct deliberate homicide. *Id*. at ¶19, *citing Wood I* at ¶50.

## II.   Wood's Claim for Relief

Woods generally asserts that the Fifth Amendment prohibits her retrial. Wood argues that jeopardy attached when the jury was empaneled and sworn for her trial in January of 2021. Woods further contends that the Fifth Amendment's double jeopardy provisions apply to acquittals entered on appeal and that she was, in fact, acquitted on appeal. (*See*, Doc. 1-32 at 34-37.) Woods contends that she is being retried for the same offense in violation of her right to be free from double jeopardy. (*Id*. at 38-43.) In denying the writ for supervisory control, Wood asserts the Montana Supreme Court crafted a new exception to the Fifth Amendment's

prohibition, "the elements plus collateral-estoppel" test, which finds no basis in federal law and should not be adopted.  (*Id*. at 43-48.)

The State argues that no double jeopardy violation has occurred.  The State first argues that Wood was not acquitted of direct deliberate homicide and that Wood's reliance is misplaced upon *Sanabria*.  (Doc. 4 at 19-23.)  The State next asserts that Wood fails to show that the Montana Supreme Court incorrectly applied the Double Jeopardy Clause. (*Id*. at 24-29.)  The State argues that the cases upon which Wood relies do not support the theory she advances—that acquittal on one mean of liability, accountability, forecloses retrial on the other mean of liability, direct commission of deliberate homicide.  (*Id*. at 30-32.)  Finally, the State contends that other jurisdictions have held that retrial under an alternative mean of committing an offense does not implicate double jeopardy and that retrial on the alternative mean furthers the underlying policy of double jeopardy.  (*Id*. at 32-38.)

### III.   Legal Standards

A habeas petition "raising a double jeopardy challenge to petitioner's retrial in state court is properly treated as a petition filed pursuant to 28 U.S.C. §2241." *Wilson v. Belleque*, 554 F. 3d 816, 821 (9th Cir. 2009).  Such a petition "is not reviewed under the deferential standards imposed by AEDPA." *Id*. at 828.  Rather a federal court must grant habeas relief if it concludes "on de novo review that

retrying [her] on [the] charge would violate the Double Jeopardy Clause." *Id.*

Additionally, the Court accepts Wood's position that *Younger* abstention does not apply in the present circumstances. *See Mannes v. Gillespie*, 967 F. 2d 1310, 1312 (9th Cir. 1992) ("A claim that a state prosecution will violated the Double Jeopardy Clause presents an exception to" *Younger*[2] abstention); cf. *Gouveia v. Espinda*, 926 F. 3d 1102, 1107 (9th Cir. 2019) (holding that the *Rooker-Feldman*[3] doctrine does not apply "to habeas petitions filed under § 2241).

## IV.   Analysis

The Double Jeopardy Clause does not bar Wood from being retried on the direct deliberate homicide charge. The Double Jeopardy Clause of the Fifth Amendment, enforceable against the States through the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784 (1969), provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of live or limb." U.S. Const. amend V. The prohibition bars against (1) a successive prosecution for the same offense after a defendant has been previously acquitted or convicted; (2)

---

[2] The abstention rule of *Younger v. Harris*, 401 U.S. 37 (1971), generally forbids federal courts from unduly interfering with pending state court proceedings that implicate important state interests. *See, Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

[3] Taken together, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482-86 (1983), and *Rooker Fidelity Trust Co*., 263 U.S. 413, 415-16 (1923), set out the rule commonly known as the *Rooker-Feldman* doctrine, which bars a losing party in state court from seeking appellate review of the state-court judgment in federal court based on the losing party's claim that the state judgment itself violates the loser's federal rights. *See, Bennett v. Yoshina*, 140 F. 3d 1218, 1223 (9th Cir. 1998).

relitigation of an issue that has been resolved in the defendant's favor in a prior prosecution; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

This Court has previously stated that in order to resolve a double jeopardy question, courts must determine when jeopardy attaches and when it terminates, because both are prerequisites for double jeopardy protections. *See e.g. U.S. v. Elk-Booth*, 822 F. Supp. 2d 1089, 1091 (D. Mont. Sept. 28, 2011) (*citing United Staes v. Jose*, 425 F. 3d 1237, 1240 (9th Cir. 2005). It is undisputed that jeopardy attached to Wood when the jury was empaneled and sworn during the January 2021 trial. Jeopardy would ordinarily terminate upon Woods' conviction for deliberate homicide. The Double Jeopardy Clause does not bar retrial for the same offense when the conviction is reversed on appeal. *Elk-Booth*, 822 F. Supp at 1091, *citing Ball v. United States*, 163 U.S. 662, 671-72 (1896).

Wood was convicted of deliberate homicide at trial, and the conviction was reversed on appeal. At first blush it would seem apparent that the Double Jeopardy Clause would not be offended by Wood being retried for deliberate homicide. As set forth above, the wrinkle in the present case had to do with the lack of clarity upon the theory of which Wood was convicted and the corresponding lack of evidence as to the accountability theory. The conviction could not stand because the Montana Supreme Court determined that the jury was improperly instructed on

an accountability theory given the insufficient evidence to support the same, and despite the possibility that the jury may have found Wood guilty on a theory of direct liability. *See Wood I.*

The general rule has long been that when a "defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge." *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988). Thus, for double jeopardy purposes a reversal for insufficient evidence is equivalent to an acquittal because it means "no rational factfinder could have voted to convict" on the evidence presented. *Tibbs v. Florida*, 457 U.S. 31, 40-41 (1982). Or put another way, the acquittal constitutes a final adjudication terminating jeopardy and triggering double jeopardy protections barring subsequent retrial. This is the gist of the position taken by Wood, that the reversal on the accountability theory constitutes a final adjudication and acquittal, barring a retrial of Wood, to include retrial on a direct deliberate homicide theory.

As set forth above, in *Wood II*, the Montana Supreme Court cited the alternative means set out in *State v. Ramos*, where it was explained:

> The alternative means principle dictates that when a jury renders a guilty verdict as to a single crime, but one of the alternative means for committing that crime is later held to be invalid on appeal and the record does not establish that the jury was unanimous as to the valid alterative in rendering its verdict, double jeopardy does not bar retrial on the remaining, valid alternative mean.

*Ramos*, 184 P. 3d at 1259.  Thus, in situations such as Wood's, despite one mean of conviction being reversed for lack of sufficient evidence, which is the functional equivalent of an acquittal, it has been determined that remand for a new trial based on the remaining valid mean does not offend double jeopardy notions because "jeopardy never terminated" as to the valid mean.  *See e.g. State v. Fuller*, 367 P. 3d 1057 (Wash. 2016); *State v. Garcia*, 318 P. 3d 266 (Wash. 2014).

This rationale is persuasive as applied to the instant matter.  For double jeopardy principles to apply and prevent Wood's retrial, the original jeopardy to the disputed charge must have terminated.  *See e.g., Richardson v. United States*, 468 U.S. 317, 325 (1984).  Accordingly, to establish her double jeopardy claim, Wood must demonstrate the occurrence of an event that terminated the jeopardy as to the deliberate homicide charge under a direct liability theory.  *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 309 (1984).

Wood cannot establish the existence of a terminating event as to homicide by direct liability.  The Montana Supreme Court found that insufficient evidence existed to support conviction on a theory of deliberate homicide by accountability.  The Montana Supreme Court expressly determined, however, that the jury could have, and very well may have, unanimously found Wood guilty of direct deliberate homicide.  *See*, *Wood II* at ¶19, *citing Wood I* at ¶50.  Under the alternative means principle, because jeopardy under the direct liability theory did not terminate,

13

Wood cannot avail herself of the double jeopardy protections. *Elk-Booth*, 822 F. Supp at 1091. This is not the only manner in which Wood's double jeopardy claim fails.

Both parties cite *United States v. Garcia*, 938 F. 2d 12 (2nd Cir. 1991), in support of their positions. The State argues that this case demonstrates that proceeding to a retrial on an alternative means which was not implicated by a prior acquittal does not violate double jeopardy. (Doc. 4 at 33-34.) Wood contends that unlike the defendants in *Garcia*, who the Second Circuit noted could have cleared up any ambiguity in the theories of guilt presented by submitting special interrogatories to the jury, Wood attempted repeatedly to have specific unanimity and special verdict forms regarding accountability and direct liability submitted to the jury. (Doc. 5 at 10-11.) Wood argues that the State should not benefit from its own purported misconduct and invited error. (*Id*. at 22.)

This Court understands it is not bound to defer to the state court's decision in this §2241 proceeding. A reading of *Garcia* illustrates and supports the reasoning of the Montana Supreme Court's decision that double jeopardy does not prevent the state from retrial on an alternative mean of liability even when a defendant's conviction was reversed on appeal as to of the other mean of liability.

Robert and Jane Garcia were indicted on several charges, including extortion, in connection with Robert Garcia's congressional activities. The alleged

14

extortion was premised on two legal theories: (1) extortion by wrongful use of fear, and (2) extortion under color of official right. *Garcia*, 938 F. 2d at 13. At the close of the evidence, the Garcias moved to dismiss the first theory for insufficient evidence. The district judge denied the motion and submitted both counts to the jury under a charge that permitted them to convict if they found either theory established by the proof. *Id*. The jury acquitted the Garcias of bribery and gratuity charges but convicted them of extortion. Neither the government nor the Garcias requested special interrogatories to learn upon which theory of extortion the jury based its verdict. *Id*.

The Garcias argued on appeal that the first theory of extortion, extortion by wrongful use of fear, should not have been submitted to the jury because there was insufficient evidence to support it. The Second Circuit agreed and reversed the convictions and remanded the matter back to the district court for further proceedings. The Garcias then moved the district court for an order barring retrial and dismissing the remaining counts, arguing that a second trial would violate double jeopardy. The district court denied the motion and the Garcias appealed. *Id*. What occurred in the Garcias' second appeal is not particularly applicable to the instant case as the argument and decision surrounded an "implicit acquittal," which Wood does not advance.[4] *See Id*. at 15-16. What proves instructive,

---

[4] *See e.g.*, (Doc. 4 at 30 n. 5) (referencing Wood's motion to dismiss reply brief and supervisory

15

however, is the Second Circuit's discussion of its findings regarding the underlying reversal.

The Second Circuit noted that when an appellate reversal is based on insufficient evidence, a retrial is prohibited. *Id*. at 14., *citing Burks v. United States*, 437 U.S. 1, 18 (1987) (the double jeopardy clause "precludes a second trial once the reviewing court has found the evidence legally insufficient"). The Second Circuit stated that insufficient evidence existed when it reversed the Garcias' convictions to support a conviction of extortion based on wrongful use of fear, "therefore any attempt to retry them on this theory would violate the double jeopardy clause." *Id*. at 14. Accordingly, the Second Circuit remanded for retrial on extortion only under the color of right theory. The Second Circuit concluded that retrial in this manner would not violate Double Jeopardy principles. *Id*. Put another way, a retrial of the Garcias on the alternative mean of liability did not offend double jeopardy. *See also Terry v. Potter*, 111 F. 3d 454, 459-60 (6th Cir. 1997) (citing *Garcia* for the premise that when a charge of murder is brought under two legal theories, such as direct and accomplice liability, the reversal of a conviction based on only one of the theories may not bar retrial under the other theory).

---

control petition);( *see also*, Doc. 5 at 28) (Wood acknowledges she is not arguing that an implied acquittal existed).

16

The predominant factor in *Garcia* was that the theory on which the jury had relied in convicting the defendants was unclear. The extortion charge was premised upon two independent legal theories. The same situation exists in the present case: the theory supporting Wood's conviction is unclear because Wood was convicted under a combination instruction. Nonetheless, an implicit acquittal did not occur because Wood was undisputably convicted of homicide. Retrial in *Garcia* under the color of official right theory did not violate double jeopardy principles. This finding is in accord with the Montana Supreme Court's decision that any attempt to retry Wood for deliberate homicide by accountability would run afoul of Wood's right to be free from double jeopardy, but that retrying Wood on a direct liability theory is not precluded. *See Wood II* at ¶14.

To the extent that Wood attempts to rely on *Sanabria*, 437 U.S. 54, for the proposition that acquittal on the accountability liability functions as an absolute bar to any further prosecution on a theory of direct liability, this Court finds Wood's reliance misplaced. The defendant in *Sanabria* was charged with a single offense, conducting an illegal gambling business, by engaging in horse betting and numbers betting. In an apparently erroneous interpretation of the indictment, the trial court struck the evidence related to numbers betting. The court also entered a judgment of acquittal based on the lack of evidence that the defendant had engaged in horse betting. The U.S. Supreme Court held that the Double Jeopardy Clause barred a

17

second trial on the numbers theory for two reasons. First, the indictment charged only one offense, conducting an illegal gambling business, and the judgment of acquittal was entered on the entire count, without distinguishing between theories of liability. *Id.*, 437 U.S. at 66-67. Second, even if the trial court's action meant that only the numbers theory was dismissed, the "allowable unit of prosecution" in the statute was an "illegal gambling business," which meant that successive prosecutions on a horse betting theory and a numbers theory were barred, as the only offense designated in the statute was conducting an illegal gambling business. *Id.* at 70-72.

Sanabria bears resemblance to Wood's situation. *Sanabria* is distinguishable. The defendant in *Sanabria* was acquitted. Following the government's appeal from the entry of a judgment of acquittal, it was determined that "when a defendant [who] has been acquitted at trial…may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Id.* at 64. This outcome differed from the present situation.

Wood was not acquitted. Wood was convicted at trial after the jury was instructed on two alternative means by which Wood could have committed the underlying offense.[5] In its decision in *Wood I*, the Montana Supreme Court

---

[5] *See e.g.,* Jury Instructions 13, 14, 18-20 (Doc. 1-13.)

expressly addressed the trial court's error in submitting the State's alternative theory of accountability to deliberate homicide, by aiding and abetting, to the jury for consideration.  On appeal there was no argument made, nor any corresponding finding entered, that there was insufficient evidence presented to the jury to support giving an instruction that Wood had independently or directly committed the homicide.  *See Wood II* at ¶16.  The Montana Supreme Court gave ample consideration to and drew a distinction between the two theories of liability.

Further, the Montana Supreme Court's decision reversed Wood's conviction only to the extent that that the jury's verdict may have been based upon a finding of guilt as to accountability to deliberate homicide.  Wood did not argue, and the Montana Supreme Court did not decide that the jury was improperly instructed on a theory direct liability for deliberate homicide.  There was no declaration that there was insufficient evidence regarding direct liability.  *See e.g. Richardson*, 468 U.S. at 325.  Unlike the trial judge's entry of a full acquittal on the illegal gambling count in *Sanabria*, the Montana Supreme Court's decision focused specifically on the accountability theory of liability.  *Sanabria* is distinguishable from Wood's situation on that basis alone.

Next, to the extent that Wood analogizes deliberate homicide and accountability to deliberate homicide under Montana law to the illegal gambling business violation in *Sanabria*, further examination reveals a distinction.  Wood

19

argues that under Montana case law deliberate homicide by accountability is treated not as a distinct offense, but rather as the same offense as direct deliberate homicide. Wood also notes that the State has adopted this view when it is expedient and advantageous to their position, much as the State argued in *Wood I,* and as discussed below.

It is true that the law on this issue is somewhat convoluted. As this Court has previously recognized, particularly for purposes of sentencing, Montana case law has always treated the crime of "deliberate homicide by accountability" the same as the crime of "deliberate homicide." *See e.g. Gollehon v. Mahoney*, No. CV 95-37-H-CCL, at *2 (D. Mont. July 15, 2009) (citing *In the Matter of B.D.C.,* 687 P.2d 655 (Mont.1984); *State v. Powers,* 645 P.2d 1357 (Mont.1982)). Wood asks this Court to apply the "allowable unit of prosecution" test set out in *Sanabria* and find that the State is precluded from fragmenting the single crime of deliberate homicide into separate units based upon the theory the State relies upon to prove the offense. (*See*, Doc. 1-32 at 42-43.)

The Montana Supreme Court has previously held that due process does not require the charging information to specify an accountability theory of criminal liability separate or distinct from specification of the primary offense for which the accused is legally accountable. *State v. Tower*, 881 P. 2d 1317, 1319-20 (Mont. 1994). Relying upon *Tower*, in *Wood I*, the State first argued that deliberate

20

homicide by accountability, as defined by §§45-5-102(1)(a) and -302(3), MCA, is *not* a distinct offense apart from deliberate homicide under §45-5-102(1)(a), and, accordingly the offense did not need to be referenced separately on the jury verdict form when charged as an alternative to direct deliberate homicide. The Montana Supreme Court held that *Tower* did not support either proposition advanced by the State and the case was of "no consequence" to Wood's situation. *See Wood I* at ¶¶34-35. The Montana Supreme Court went on to acknowledge that accountability required proof of essential elements in addition to those required for proof of deliberate homicide. *Id*. at ¶36.

In her briefing before this Court, Wood now takes the State's former position and argues that direct deliberate homicide and homicide by accountability are the same offense as determined by the Montana Supreme Court in *Tower* and its progeny. (Doc. 1-32 at 38-42); (Doc. 5 at 22.) Wood states that the Montana Legislature intended that accountability and direct liability only violate one statutory provision. *See*, (Doc. 5 at 20.) As the Court understands the argument, Wood asserts that a single act, shooting LaFriniere, violated a single statutory provision, Section 45-5-102(1). MCA. Accordingly, Wood asserts that *Sanabria*, rather than the *Blockburger* test, should be the framework for analyzing her claim.

Whether particular actions involve one or more than one criminal offense depends on how the legislature has defined the "allowable unit of prosecution" for

the particular offense.  *Sanabria*, 437 U.S. at 69-70 (*quoting United States Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221 (1952)).  When a defendant is charged with "multiple violations of the same statutory provision" based on a singular act, the courts must examine the "allowable unit of prosecution" as established by the legislature.  *United States v. Keen*, 104 F. 3d 1111, 1118 (9th Cir. 1996), as amended on denial of reh'g (Jan. 2, 1997) (*quoting Universal C.I.T. Credit Corp.*, 344 U.S. at 221).  In *Keen*, the defendant mounted a count multiplicity challenge after he was sentenced twice, for possessing a firearm and ammunition, when both events arose out of a single transaction.  The Ninth Circuit held that the possessions from the transaction compromised only one offense.  *Keen*, 104 F. 3d at 1119-20. The defendant in Keen engaged in the "same act"- simultaneous illegal possession of a firearm and ammunition- which constituted a violation of only one statutory provision.  *Keen*, and the corresponding "allowable unit of prosecution" test, is not analogous to Wood's situation.  Wood was charged with committing deliberate homicide in one of two alternative statutory manners.

 As set forth above, *Sanabria* is distinguishable and inapposite to the present matter.  As discussed by the Montana Supreme Court in *Wood I*, homicide by accountability and direct homicide involve different elements and statutory provisions. The Montana Supreme Court did not create a new "elements plus collateral estoppel" test, rather the Montana Supreme Court was explaining why

*Sanabria* was not applicable to Wood's case.  *See Wood II* at ¶¶16-17.

When a single act is alleged to have violated "two distinct statutory provisions," whether the provisions are in the same statute or different statutes, courts apply the test announced in *Blockburger v. United States*, 284 U.S. 299 (1932).  *See Missouri v. Hunter*, 459 U.S. 359 (1983); *United States v. Hickey*, 367 F. 3d 888, 891-92 (9th Cir. 2004). Accordingly, the *Blockburger* test must be applied to determine whether direct deliberate homicide and deliberate homicide by accountability are the same offense for double jeopardy purposes.  The U.S. Supreme Court articulated the test for determining whether two offenses are sufficiently distinguishable:

> The applicable rule is that, where the same transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact the other does not.

*Blockburger*, 284 U.S. at 304.  Under this test, "[d]ouble jeopardy is not implicated so long as each [offense] requires proof of an element which the other does not." *Id*. at 892.

As pointed out by Respondents, (*see e.g.,* doc. 4 at 25), and as discussed by the Montana Supreme Court in *Wood I* and *Wood II*, direct deliberate homicide and accountability criminalize different conduct and contain different elements.  One commits direct deliberate homicide if the person "purposely or knowingly causes the death of another human being."  MCA §45-5-102(1)(a).  Under accountability

for deliberate homicide, one is "legally accountable of the conduct" for another when "with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the [deliberate homicide]." MCA §45-2-302(3).  Deliberate homicide requires a direct causation element; an individual must physically commit the offense.  Deliberate homicide by accountability requires one to conspire or encourage another to participate in commission of the homicide.  Each offense requires proof of a fact that the other does not.  Under *Blockburger*, double jeopardy is not offended in the instant matter.

### V.      Conclusion

Wood has not established that a double jeopardy violation occurred. Allowing a retrial of Wood on a theory of direct liability for deliberate homicide protects "the right of an accused to be given a fair trial" as well as "the societal interest in punishing one whose guilt is clear after [she] has obtained such a trial." *United States v. Tateo*, 377 U.S. 463, 466 (1964).  The petition will be denied.

### VI.     Certificate of Appealability

State prisoners seeking post-conviction relief under 28 U.S.C. § 2241 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge.  28 U.S.C. § 2253(c)(2); *Wilson*, 554 F. 3d at 824-25.  A certificate of appealability may issue

24

only if petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Pursuant to this standard, this Court concludes Wood is entitled to a certificate of appealability with respect to the claims raised in this petition. As Wood presents close questions, and reasonable jurists could find a basis to encourage further proceedings. A certificate of appealability is granted.

Based on the foregoing, the Court enters the following:

### ORDER

1. Wood's Petition (Doc. 1) is DENIED.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is GRANTED.

DATED this 25th day of June, 2026.

Brian Morris, Chief District Judge
United States District Court